IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Ricardo Nieves, : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | |
| : | |
| City of Reading, Pennsylvania, : | Civil Action No. _____ |
| Vaughn Spencer, in his Official Capacity as : | |
| Mayor of the City of Reading and in his : | |
| Individual Capacity, : | **JURY TRIAL DEMANDED** |
| William Heim, in his Official Capacity as : | |
| Chief of the Reading Police Department : | |
| And in his Individual Capacity, : | |
| Pacific Institute for Research & Evaluation, : | |
| John Doe, an Adult Individual, and : | |
| Jane Doe, an Adult Individual, : | |
| : | |
| Defendants. : | |

**Plaintiff's Motion for Preliminary Injunction**

Plaintiff Ricardo Nieves by undersigned counsel hereby moves this Honorable Court to issue a preliminary injunction against Defendants City of Reading, Vaughn Spencer, William Heim and the Pacific Institute for Research & Evaluation, and in support thereof avers as follows:

1. Petitioner is Plaintiff Ricardo Nieves ("Nieves), an adult individual residing at 2256 Northmont Boulevard, City of Reading, Berks County, Pennsylvania 19605. Declaration of Ricardo Nieves ¶ 1.

2. On Friday, December 13, 2013, Nieves was traveling on the Bingham Street Bridge into the City of Reading, Pennsylvania. Nieves was on a public roadway. *Id*. at ¶ 2.

3. A police cruiser owned and operated by the City of Reading Police Department was parked by the side of the street with its lights flashing. *Id*. at ¶ 3.

4. Bright orange security cones lined the lane where Nieves was driving. Nieves was in the right hand lane and the lane to the left was full of traffic such that Nieves could not pull over. *Id*. at ¶ 4.

5. An adult male ("John Doe") stepped out into Nieves' lane of traffic, blocking Nieves' further advance, and flagged Nieves to pull off the public road into a parking lot on Laurel Street. *Id*. at ¶ 5.

6. Having no ability to advance further on the road, and with no ability to move into the left-hand lane because of traffic, Nieves drove into the parking lot. *Id*. at ¶ 6.

7. In the parking lot were five to seven improvised parking spaces outlined on three sides with orange security cones. Nieves pulled into one of these parking spaces. *Id*. at ¶ 7.

8. Nieves reasonably believed that he was being stopped by the City of Reading police department because of the flashing lights of the police car on the street, the fluorescent orange cones on the street and in the parking lot, and the presence of a City of Reading police car in the parking lot that was occupied by a police officer. *Id*. at ¶ 8.

9. A woman with a clipboard ("Jane Doe") approached up to Nieves car and began to speak to Nieves. *Id*. at ¶ 9.

10. Jane Doe spoke quickly and stated several things, including that Nieves was not being cited, that Nieves had done nothing wrong and that Nieves was not being "pulled over." *Id*. at ¶ 10.

11. The last statement was clearly false, because Nieves only pulled over after John Doe had stepped into the middle of his lane of traffic on the public street and flagged him into the parking lot, all while lights were flashing on the police car parked at the location. *Id*. at ¶ 11.

12. Jane Doe stated that the purpose of the stop was a survey of drivers' behavior and that she wanted to take a cheek swab from Nieves to check for the presence of prescription drugs. Jane Doe also stated that Nieves would be paid if he agreed to the same. *Id*. at ¶ 12.

13. Nieves refused to provide the cheek swab Jane Doe requested. *Id*. at ¶ 13.

14. Jane Doe then tried a second time to convince Nieves to provide a cheek swab. *Id*. at ¶ 14.

15. Nieves again refused to provide a swab. *Id*. at ¶ 15.

16. Then, a third time, Jane Doe tried to coerce Nieves to give a cheek swab. *Id*. at ¶ 16.

17. At this point Nieves stated to her very firmly, "No. Thank. You." *Id*. at ¶ 17.

18. Jane Doe then tried to hand Nieves a pamphlet, which he did not accept. *Id*. at ¶ 18.

19. Jane Doe then walked away from Nieves' car. *Id*. at ¶ 19.

20. Nieves then tried to exit the parking lot but found no means of egress. Other cars had by then also been pulled off the road. *Id*. at ¶ 20.

21. Several feet away in the parking lot the officer was sitting in his police car, and he pointed toward the entrance to the parking lot through which Nieves had entered as if Nieves should exit that way. *Id*. at ¶ 21.

22. Nieves then left the parking lot. *Id*. at ¶ 22.

23. John Doe and Jane Doe were acting as employees or authorized agents of a private corporation known as the Pacific Institute for Research and Evaluation ("PIRE"). *Id*. at ¶ 23.

24. PIRE receives money from the federal government to research the driving habits of motorists.  *Id*. at ¶ 24.

25. PIRE contracted with the City of Reading and/or the Reading Police Department, with the approval and authorization Mayor Vaughn Spencer and/or Chief William Heim, and paid money to either or both of such entities to conspire to stop Nieves without probable cause or reasonable suspicion to believe that Nieves had violated any law or provision of the Vehicle Code, and without satisfying the prerequisites for a legal sobriety checkpoint as mandated by the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, and the laws of Pennsylvania.  *Id*. at ¶ 25.

26. At all times Nieves believed that he was under compulsion to stop his vehicle, to stay and interact with Jane Doe, that he was being detained, and that if he should try to leave he would be subject to arrest and prosecution.  *Id*. at ¶ 26.

27. The practice of the systematic stop of vehicles such as plaintiff suffered in the absence of warrant, probable cause or reasonable suspicion was adopted by Defendant City of Reading, and Defendants Mayor Spencer and Chief Heim as the highest policy-making officials of the City of Reading for matters of the implementation of overall and day-to-day police operations.

WHEREFORE, Plaintiff prays this Honorable Court to PRELIMINARILY ENJOIN Defendants City of Reading, Spencer, Heim and PIRE from implementing and enforcing the Suspicionless Seizure Policy as a violation of plaintiff's right to protection against unreasonable seizures under the Fourth Amendment, and further award attorneys fees, costs of suit and whatsoever other relief as is just and equitable.

        Respectfully submitted,

        **AARON MARTIN LEGAL, LLC**

By:    /s/ Aaron D. Martin
        _____
        Aaron D. Martin
        Pa. Atty. I.D. No. 76441
        Attorney for Plaintiff,
        Ricardo Nieves
        423 McFarlan Rd., Ste. 100
        Longwood Corp. Ctr. South
        Kennett Square, PA  19348
        (610) 444-2001
        (610) 444-5819 (fax)
        *amartin@aaronmartinlegal.com*

Date: December 24, 2013.